UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AMERICAN COPPER & BRASS, INC., a
Michigan corporation, individually and as
the representative of a class of similarly
situated persons,

    Plaintiff,         Case No.  1:09-CV-1162

v.              HON. GORDON J. QUIST

LAKE CITY INDUSTRIAL PRODUCTS,
INC., and JEFFREY MEEDER,

    Defendants.

_____/

## OPINION GRANTING MOTION FOR
## CLASS CERTIFICATION AND APPOINTING CLASS COUNSEL

American Copper & Brass, Inc., filed this proposed class action under the Telephone
Consumer Protection Act (TCPA), 47 U.S.C. § 227.  American Copper has filed a Motion for Class
Certification.  (Docket no. 39.)  Defendants, Lake City Industrial Products, Inc. ("Lake City") and
Jeffrey Meeder, and American Copper have extensively briefed the issues presented in American
Copper's motion.  (Docket nos. 51, 61, 78, 79, & 80.)  Because this action satisfies Rule 23's criteria,
the Court will grant American Copper's Motion for Class Certification and appoint American
Copper's attorneys as class counsel.

### I. BACKGROUND

Because several other courts have reviewed the background facts of nearly identical cases
in depth, this Court will simply respond to the parties' arguments.  This Court refers readers to
*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011).  Some
"scene setting," however, is necessary.

Caroline Abraham owned and operated Business To Business Solutions ("B2B"), a company that advertised for clients by sending out mass fax broadcasts.[1]  Caroline Abraham's son, Joel Abraham, helped operate B2B.  B2B obtained clients in the first place by sending out mass fax broadcasts. B2B's faxes soliciting business stated that B2B's advertising "Conforms to February, 2006 Faxing Guidelines."  (Docket no. 55-3 at 2.)  B2B sent a fax to Lake City soliciting Lake City as a client.  Lake City inquired into B2B's services and, after a purported agent of B2B allegedly told Lake City's president, co-Defendant Jeffrey Meeder, that B2B's services were legal, Lake City decided to enlist B2B's services.  B2B helped Lake City draft its advertisement by having Defendants fill out a questionnaire regarding Lake City's business.  In addition, B2B created a list of targets – a certain geographic location or a particular category of businesses that would receive Lake City's advertisement.  B2B told clients that it would fax their advertisement to 10,000 targets.  B2B performed these services for about $92.  Eventually, without permission or invitation from any target, B2B sent the advertisement via fax to the targeted businesses.

On or around February 20, 2006, one of the faxes was sent to American Copper.  (Compl. Ex. A.)  American Copper did not request to receive the fax or give Lake City or B2B permission to send the fax.  American Copper filed its claim on December 29, 2009.

The TCPA forbids the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C).  An unsolicited advertisement is one sent without the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(5).  The TCPA imposes on anyone who sends an unsolicited fax advertisement statutory damages of $500 per fax, which can be trebled if the court finds that the violation was willful or knowing. 47 U.S.C. § 227(b)(3).  The TCPA provides a private right of action to enforce the foregoing provisions.  *Id.*

---

[1] B2B also apparently did business under the names Macaw or Maxileads.

2

As to Lake City's advertising campaign, American Copper's expert concluded that B2B faxed Lake City's advertisement to 10,627 different fax numbers.  (Pl.'s Br. Ex. A.)  The proposed class consists of the 10,627 people who received a Lake City advertisement.

## II. ANALYSIS

### A. <u>Rule 68 Offer of Settlement</u>

On August 24, 2011, American Copper moved for class certification.  Two weeks earlier, on August 10, 2011, Defendants served an offer of judgment pursuant to Fed. R. Civ. P. 68.  (Docket no. 38.)  Defendants offered American Copper $2,500 to settle the claim.  The most American Copper can possibly recover under the TCPA is $1,500.  Normally, an offer of judgment which provides for a greater amount of recovery than the statutory damages allowed moots a complaint because the offer eliminates a legal dispute upon which federal jurisdiction can be based.  *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 574 (6th Cir. 2009).

The Fifth Circuit has held that a Rule 68 offer of judgment cannot moot a lead plaintiff's claim when the lead plaintiff timely moves for class certification because the motion for certification relates back to the lead plaintiff's filing of the complaint.  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 922 (5th Cir. 2008).  In *O'Brien*, the Sixth Circuit recognized the Fifth Circuit's holding in *Sandoz.*  575 F.3d at 574-75; *see also Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625 (6th Cir. 2005) ("[T]he [Sixth Circuit] suggested that it would be inappropriate to hold that a case was mooted by a settlement offer made to a named plaintiff when a motion for class certification was pending.").

The Court considers American Copper's motion for class certification to "relate back" to the filing of the class complaint.  Thus, since the offer of judgment did not provide for class-wide relief while a motion for class certification had effectively been filed, it does not moot the class complaint.

3

**B.    Michigan Court Rule 3.501(A)(5)**

To create a private right of action, the TCPA states: "[a] person or entity may, *if otherwise permitted by the laws or rules of a court of a State*, bring [an action] in an appropriate court of that State."  47 U.S.C. § 227(b)(3) (emphasis added).

Defendants argue that class certification should be denied because, as a matter of law, Michigan Court Rule (MCR) 3.501(A)(5), "prohibits maintenance of claims such as TCPA class actions."  (Defs.' Br. at 2.)  MCR 3.501(A)(5) states that "[a]n action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action." MCR 3.501(A)(5).

Two recent Supreme Court decisions reject Defendants' arguments.  In *Mims v. Arrow Financial Services, LLC*, ___ U.S. ___, 132 S. Ct. 740 (2012), the Court held that federal and state courts have concurrent jurisdiction over TCPA claims.  In *Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, ___ U.S. ___, 130 S. Ct. 1431 (2010)*,* the Court held that federal courts use Fed. R. Civ. P. 23 to determine whether to entertain a class action claim.  Therefore, this Court has jurisdiction over claims arising from the TCPA, and this Court may entertain a TCPA class action lawsuit if Rule 23's criteria are met.

**C.    Rule 23 Requirements**

At about the time *Mims* was decided, 65 TCPA class actions had been filed in the States of Illinois, Indiana, and Wisconsin, which were removed to a federal district court, and an additional 24 TCPA class actions had been initially filed in federal district court.  *Mims*, 132 S. Ct. at 753. Even with the high number of TCPA class actions, this Court is unaware of a single case where a federal district court denied class certification.

4

A class may be certified only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011).

Rule 23(a) provides that a class action may be maintained "if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove*, 130 S. Ct. at 1437.  If a class action is to be maintained, the Court must also appoint class counsel.  Fed. R. Civ. P. 23(g).

• **Regarding the conditions contained in Rule 23(a):**

 1. **Numerosity:**  The evidence suggests that the proposed class contains 10,627 members. "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (quotations and citations omitted).  In addition, certification of the class does not require the class members' identities at this time.  *See Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005); 32B Am. Jur. 2d *Federal Courts* § 1614 (2012) ("The fact that the members of a proposed class are not specifically identifiable supports, rather than bars, the bringing of a class action, since joinder is impracticable and the requirement of Rule 23 would thus be fulfilled." (citing *Doe v. Charleston Area Med. Ctr., Inc.,* 529 F.2d 638 (4th Cir. 1975))).  Therefore, joinder of all class members would not be practicable and, thus, the "numerosity" requirement is satisfied.

 2. **Commonality:**  Defendants do not argue that the "commonality" requirement is not met. Several common questions of law and fact are present.  It appears that Defendants engaged in conduct which led to every class member receiving the same fax.  In addition, this case involves common legal questions regarding Defendants' liability under the TCPA.

5

**3. Typicality:** Defendants do not argue that the "typicality" requirement is not met. The legal theory for each class member is based on the same facts and legal theory as American Copper's. Therefore, American Copper's claim is typical of the other class members' claims. *See In re Am. Med. Sys.*, 75 F.3d at 1082.

**4. Adequacy of Representation:** Defendants do not argue that American Copper cannot fairly and adequately protect the interests of the class. "The adequate representation requirement overlaps with the typicality requirement." *Id.* at 1083. American Copper's interests are aligned with other class members because all class members seek statutory damages under the TCPA arising from Defendants' fax. American Copper is an adequate representative of the class.

However, Defendants do argue that class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class. This factor will be discussed at further length during the discussion regarding appointment of class counsel.

• **Regarding Rule 23(b)(3)'s requirement:**

**1. Predominance:** Rule 23(b)(3)'s predominance resembles Rule 23(a)(3)'s typicality requirement. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

The common questions are at the heart of this litigation. Namely, whether Defendants violated the TCPA by sending the same fax to every class member.

**2. Superiority:** Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. A class action is superior when the "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

6

without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 2246 (1997) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes).  One of the purposes underlying Rule 23(b)(3) is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *Id.* at 617, 117 S. Ct. at 2246 (citations omitted).

This type of case weighs in favor of the class action as a superior device.  Under the TCPA, the maximum recovery for each class member is $1500, and it does not allow for fee shifting.  Hence, individual class members are unlikely to litigate TCPA claims.  *See Amchem*, 521 U.S. at 617, 117 S. Ct. at 2231.

Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims.  See *Mims*, 132 S. Ct. at 751.

In *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 276-78 (4th Cir. 2010) (Wilkinson, J., concurring), Judge Wilkinson suggested that the possibility of an annihilating damage award was a ground for denying class certification because of possible violations of the Fair and Accurate Credit Transactions Act.

> To certify in cases where no plaintiff has suffered any actual harm . . . and where innocent employees may suffer the catastrophic fallout could not have been Congress's intent.  Indeed, the relatively modest range of statutory damages chosen by Congress suggests that bankrupting entire businesses over somewhat technical violations was not among Congress's objectives.
>
> ****
>
> [C]ourts have noted that "the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues."  Indeed, this principle has some salience in the punitive damages context, where the Supreme Court has noted that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).

Rather than considering annihilative damages as they bear on due process, however, it is preferable for a district court to address them in the context of Rule 23(b)(3)'s superiority requirement.  Doing so gives the district court discretion to avoid a serious constitutional problem in the best tradition of the Brandeis concurrence in *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288 (1936), and permits a district court to declare that a device is not superior when a plaintiff class whose members suffered no [harm] of any sort still threatens to wipe an entire company off the map.

*Id.* at 276-78.

On the other hand, according to at least one scholar, "[t]here is tension, if not conflict, between those cases considering economic impact in the superiority analysis and the U.S. Supreme Court's Rule 23 jurisprudence."  2 Newberg, et al., Newberg on Class Actions §4:44 (4th ed. 2012). [Newberg cites as authority the following:  (quotes are from Newberg, not the Supreme Court referenced). *Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545 (1979), held that "class relief is equally available for all claims, including minimum statutory damage claims, assuming there is no such express restriction"; *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S. Ct. 2326 (1979), "held that the 'potentially ruinous effect' of a treble damage class action judgment was not a reason to preclude relief under the Clayton Act"; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S. Ct. 2140 (1974), "held that: 'nothing in either the language or history of Rule 23 gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.'  Because economic impact inquiry necessitates speculation by the court about whether the plaintiff will prevail and for how much, the consideration is arguably at odds with Eisen."; and, *Shady Grove, supra,* "lends some support to the notion that the possibility of large damage awards due to the aggregation of statutory damages claims is not a legitimate ground for denying class certification." ].

At least two circuits have expressly said that a district court cannot consider the economic impact of potential damages for purposes of certification.  *See, e.g., Bateman v. Am. Multi-Cinema,*

*Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ("[T]he district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis."); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006) ("The district judge sought to curtail the aggregate damages for violations he deemed trivial. Yet it is not appropriate to use procedural devices to undermine laws of which a judge disapproves."). *Accord Landsman & Funk v. Skinder-Strauss Assocs.*, 640 F.3d 72, 94-95 (3d Cir. 2011), *partially reinstated, other portions vacated*, 2012 WL 2052685 (Apr. 17, 2012) ([T]he [district court] stated that a class action would not be a superior method of handling claims under the TCPA. We are not so sure this is correct.").

The undersigned, with sympathy for Judge Wilkinson's point of view, does not consider the economic impact of a damage award at this time. This could possibly be considered after entry of judgment for plaintiffs.

Therefore, a class action is the superior method for adjudicating the claims.

- **Regarding Rule 23(g)'s adequacy of class counsel requirement:**

Defendants argue that American Copper's proposed class counsel fails to satisfy the adequacy requirement of Rule 23(g). This Court must consider four criteria in appointing class counsel, Fed. R. Civ. P. 23(g)(1)(A), and may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B).

In *Creative Montessori*, Judge Posner, referring to some proposed class counsel in the instant case, wrote for a unanimous panel:

> [C]lass counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class. There is no basis for confidence that they would prosecute the case in the interest of the class, of which they are fiduciaries, rather than just in their interest as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts.

*Id*. at 917.[2]

### 1.  Procurement of Discovery Materials

Defendants say that American Copper's counsel "unethically procure[d]" "a hard drive and backup DVDs from Caroline Abraham" that were "subject to a protective order" in *CE Design v. Cy's Crabhouse North, Inc.*, No. 07-cv-5456 (N.D. Ill.), and *GM Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953 (N.D. Ill).  Defendants contend that B2B's computer data was protectable material that should have been kept confidential and should not have been used to identify potential plaintiffs in other cases.  On the other hand, American Copper's ethicist opined that Ryan Kelly's representation did not violate the American Bar Association's ("ABA") Rules of Professional Conduct.

Several district courts have said that the materials provided were not protectable.  This Court agrees, but whether the information was protectable is beside the point.  The issue is whether American Copper's counsel "unethically procured" the non-protectable materials and, if so, whether it calls into question American Copper's counsel's ability to represent the class.

Ryan Kelly's representation that the materials would remain confidential came after the Eastern District of New York issued a subpoena compelling the materials.  Kelly could have obtained the information without ever making a promise to Caroline Abraham because she was required to provide the information pursuant to a subpoena.  At the same time, Kelly still could have

---

[2] In *Creative Montessori*, the Seventh Circuit remanded the case for the district court to apply the proper standard to determine if class counsel would be adequate–whether the district court has "serious doubt that counsel will represent the class loyally."  *Creative Montessori*, 662 F.3d at 917.   The Seventh Circuit said that the district court found two instances of misconduct by class counsel Anderson + Wanca: 1) obtaining material from Abraham on the basis of a promise of confidentiality that concealed the purpose of obtaining the materials; and 2) sending a misleading communication in order to solicit business.  *Id*. at 917.  The Seventh Circuit instructed the district court to "re-evaluate the gravity of class counsel's misconduct and its implications for the likelihood that class counsel will adequately represent the class."  *Id*. at 919.  As of the date of this Opinion, the district court has not yet re-evaluated these considerations.

upheld the representation that he made to Abraham: once Kelly obtained all of the information pursuant to the subpoena, he could have used the information only for that litigation. But, Kelly chose to make the representation to Abraham and he chose *not* to keep the information confidential. Instead, Kelly and his fellow counsel used B2B's information to generate class action lawsuits throughout the country. While Kelly is not an attorney representing American Copper, his law firm, Anderson + Wanca, is one of the firms that represents American Copper.

Since this Court may consider any matter pertinent to counsel's ability to fairly and adequately represent the interest of the class, these acts by counsel have been considered.

### 2. $5,000 Payment to Abraham

This Court is in agreement with the district court in *CE Design* that no evidence suggests that Wanca or Kelly paid or attempted to pay Abraham or Joel Abraham contingent upon the *content* of their testimony or documents. *CE Design*, 2010 WL 3327876, at *7-*8. Thus, even though the "fact and form of the attempted payment – a $5,000 check sent in a Ramada Plaza Hotel envelope scantily labeled "document retrieval" – were ill-considered," the payment *alone* is not sufficient for denying class certification. Still, the Court has considered the fact and form of the payment when taking into account all of the circumstances.

### 3. Solicitation Letters

Regardless of whether proposed class counsel used misleading solicitation letters in other cases, *see Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, Case no. 09-cv-3963, 2011 WL 3273078 (N.D. Ill. July 27, 2011), *vacated and remanded by* 662 F.3d 913 (7th Cir. 2011), apparently American Copper did not engage proposed class counsel because of a solicitation letter.[3]

---

[3] American Copper's representative, William Smith, testified that he never received a solicitation letter. In fact, Smith recalled receiving the fax from Lake City and faxing it to his long-time counsel Rick LaFlamme. Smith permitted LaFlamme to file American Copper's case as a class action with American Copper as lead plaintiff. Subsequently, LaFlamme became a state-court judge. Thus, LaFlamme introduced Anderson + Wanca to American Copper, and

Thus, the manner in which class counsel obtained American Copper as a client does not call into question the adequacy of class counsel's representation.  However, American Copper's counsel's use of the solicitation letters in other cases has been considered when looking at all of the circumstances.

### 4. Totality of Circumstances

There is no doubt that Bock & Hatch and Anderson + Wanca, for better or worse, have experience in TCPA class actions.  As noted, in *Creative Montessori*, Judge Posner expressed discontent, or at least the district court's discontent, with some of the attorneys that represent American Copper.

The instant case is somewhat different from *Creative Montessori* in that Jason Thompson, one of the proposed attorneys for the proposed class, has not been tainted by any allegation of unethical misconduct.  He will be held fully responsible for all acts of counsel.  As with each attorney representing the class, Mr. Thompson must competently, diligently, and adequately represent the class.  Indeed, Mr. Thompson's past experience suggests that he will do so.  With this understanding, the undersigned judge has no serious doubt that the members of the class will receive adequate representation.

Therefore, taking into account all of the circumstances, the Court believes that class counsel meets all of the requirements of Fed. R. Civ. P. 23(g)(1) and will adequately represent the class.  *See CE Design*, 2010 WL 3327876, at *7 (addressing the very arguments that Defendants made here and stating, "[t]aking all of the circumstances into account, there is no basis to justify disqualification of class counsel or decertification of the class on the grounds cited by [the defendant]"); *Siding & Insulation*, 279 F.R.D. 442 (finding Bock & Hatch and Anderson + Wanca adequate and certifying

American Copper gave LaFlamme permission to retain Anderson + Wanca as American Copper's counsel.

12

class after addressing these same arguments); *Reliable Money Order, Inc. v. McKnight Sales Co.*,

___ F.R.D. ___, 2012 WL 1117992, at *8 (E.D. Wis. Mar. 30, 2012) (same).

### III. CONCLUSION

American Copper's Motion for Class Certification will be granted.  The Court will certify

the following class:

> All persons who were successfully sent a facsimile on February 20, 2006, February 21, 2006, or February 22, 2006, from "Lake City Industrial Products, Inc."; inquiring, "Sick And Tired of Thin, Low Quality Import Pipe Thread Sealing Tapes?"; stating "End the problems now with high quality, MADE IN U.S.A. 100% virgin ptfe pipe thread sealing tapes!"; and offering "Free! Private label on every roll for first time orders."

Furthermore, the Court, based on its above reasoning and the Rule 23(g) factors, will appoint Jason

Thompson of Sommers Schwartz, PC; Phillip Bock of Bock & Hatch; and Brian Wanca of Anderson

+ Wanca as class counsel.  Moreover, American Copper's counsel will be ordered to file a proposed

notification form which complies with Fed. R. Civ. P. 23(c), together with a statement describing

the method by which the notice will be provided to class members and a list of persons to whom the

notice will be sent.

Finally, class counsel should be aware that any claim for attorney's fees will be closely

scrutinized for duplication and value of the time spent.  For example, only one lawyer should attend

court hearings, and requests for fees should not include research already performed in other cases.

A separate Order will issue.

Dated:  July 24, 2012                                       _____/s/ Gordon J. Quist_____
                                                       GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE